1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICKEY L. MARHANKA,

                Plaintiff,

      v.

NANCY A. BERRYHILL, Deputy
Commissioner of Social Security for
Operations,

                Defendant.

Case No. C17-5636 RSL

ORDER REVERSING AND
REMANDING DEFENDANT'S
DENIAL OF BENEFITS

      Plaintiff Mickey Marhanka appeals the final decision of the Commissioner of the

Social Security Administration ("Commissioner"), which denied his application for

supplemental security income ("SSI") under Title XVI of the Social Security Act (the

"Act"), 42 U.S.C. §§ 1381-83f, after a hearing before an administrative law judge

("ALJ"). For the reasons set forth below, the Commissioner's decision is REVERSED

and the case is REMANDED for further administrative proceedings under sentence four

of 42 U.S.C. § 405(g).

I.      FACTS AND PROCEDURAL HISTORY

      Plaintiff is a 62-year-old man with a high school education. See Administrative

Record ("AR") at 151, 197. Plaintiff protectively filed an application for SSI in July 2011, alleging that his disability began on January 15, 2011. AR at 359. His claim was denied initially and upon reconsideration. AR at 162, 176.

Plaintiff subsequently requested a hearing, which took place on June 4, 2013. AR at 80. On July 10, 2013, the ALJ issued a decision finding that Plaintiff was not disabled because he could perform work available in significant numbers in the national economy. AR at 198.

On March 27, 2015, the Appeals Council vacated the ALJ's decision and remanded Plaintiff's case with instructions to obtain updated medical records, a mental status consultative examination, and evidence from a medical expert on Plaintiff's mental impairments. AR at 205-06. The Appeals Council further directed the ALJ on remand to reassess Plaintiff's residual functional capacity, and obtain evidence from a vocational expert. AR at 207.

The ALJ held a second hearing on December 14, 2015, at which he took testimony from Plaintiff, medical expert Kent Layton, Psy.D., and vocational expert Steve Duchesne. AR at 43. During the hearing, Plaintiff sought to amend his claim to a closed period from July 13, 2011 to December 31, 2014. AR at 45.

On February 2, 2016, the ALJ issued a decision finding that Plaintiff was not disabled because he could perform past relevant work as a painter. AR at 34-35. Plaintiff's request for review by the Appeals Council was denied on June 9, 2017, AR at 1, making the ALJ's ruling the Commissioner's final decision. *See* 42 U.S.C. § 405(g).

Plaintiff filed the present action challenging the Commissioner's decision on August 14, 2017. Dkt. 1.

## II.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. Id.

## III.     EVALUATING DISABILITY

As the claimant, Plaintiff bears the burden of proving that he is disabled within the meaning of the Act. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment that has lasted, or is expected to last, for a continuous

period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled

under the Act only if his impairments are of such severity that he is unable to do his

previous work, and cannot, considering his age, education, and work experience, engage

in any other substantial gainful activity existing in the national economy. 42 U.S.C. §

423(d)(2)(A); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for

determining whether a claimant is disabled within the meaning of the Act. See 20 C.F.R.

§ 416.920. The claimant bears the burden of proof during steps one through four. At

step five, the burden shifts to the Commissioner. Id. If a claimant is found to be disabled

at any step in the sequence, the inquiry ends without the need to consider subsequent

steps. Step one asks whether the claimant is presently engaged in "substantial gainful

activity." 20 C.F.R. § 416.920(b).[1] If he is, disability benefits are denied. If he is not,

the Commissioner proceeds to step two. Id. At step two, the claimant must establish that

he has one or more medically severe impairments, or combination of impairments, that

limit his physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). If

the claimant does not have such impairments, he is not disabled. Id. If the claimant does

have a severe impairment, the Commissioner moves to step three to determine whether

the impairment meets or equals any of the listed impairments described in the regulations.

20 C.F.R. § 416.920(d). A claimant whose impairment meets or equals one of the listings

---

[1] Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. § 416.972.

for the required 12-month duration is disabled.  <u>Id.</u>

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. § 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work.  20 C.F.R. § 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. § 416.920(g); <u>Tackett</u>, 180 F.3d at 1099- 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## IV.   DECISION BELOW

On February 2, 2016, the ALJ issued a decision finding the following:

1.  The claimant has not engaged in substantial gainful activity since July 13, 2011, the protective filing application date (20 C.F.R. § 416.971 *et seq.*).

2.  The claimant has the following severe impairments: dyslexia, depression, anxiety/posttraumatic stress disorder, borderline personality disorder, attention deficit hyperactivity disorder, and lumbar spine degenerative disc disease (20 C.F.R. § 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20

C.F.R. §§ 416.920(d), 416.925, and 416.926).

4. The claimant has the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c). The claimant can perform routine or learned medium level work that does not involve high stress work. He can have superficial face-to-face contact with the public. He needs to work independently. He would be off-task five percent of the workday. He cannot perform security work and he should not be in charge of the safety of others.

5. The claimant is capable of performing past relevant work as a painter. This work does not require the performance of work-related activities precluded by his RFC (20 C.F.R. §§ 416.965).

6. The claimant has not been under a disability, as defined in the Act, since July 13, 2011 (20 C.F.R. § 416.920(g)).

AR at 20-35.

## V.    ISSUES ON APPEAL

The issues on appeal are:

A.    Whether the ALJ properly assessed Plaintiff's symptom testimony.

B.    Whether the ALJ properly assessed the medical evidence.

C.    Whether the ALJ accurately formulated Plaintiff's RFC and, accordingly,

whether the ALJ's findings at step four were proper.

D.    Whether, if the Court finds error, it should remand for an award of benefits.

Dkt. 12 at 2.

## VI.    DISCUSSION

**A.    Evaluation of Plaintiff's Symptom Testimony**

Plaintiff argues that the ALJ erred in rejecting his subjective symptom testimony.

See Dkt. 12 at 10-17. The Court disagrees.

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014)). At this stage, the claimant need only show that the impairment could reasonably have caused some degree of the symptoms; he does not have to show that the impairment could reasonably be expected to cause the severity of the symptoms alleged. Id. The ALJ found that plaintiff met this first step because his medically determinable impairments could reasonably be expected to cause his alleged symptoms. AR at 26.

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet.'" Trevizo, 871 F.3d at 678 (quoting Garrison, 759 F.3d at 1014-15). In evaluating the ALJ's determination at this step, the Court may not substitute its judgment for that of the ALJ. Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). As long as the ALJ's decision is supported by substantial evidence, it should stand, even if some of the ALJ's reasons for discrediting a claimant's testimony fail. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).

The ALJ, finding no evidence of malingering, held that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not

entirely credible.[2]  AR at 26.  The ALJ gave five reasons for this determination: (1) Plaintiff's statements were inconsistent with the medical evidence; (2) the record revealed drug-seeking behavior; (3) Plaintiff's poor work history suggested his lack of employment may have been due to factors other than medical impairments; (4) there were indications of secondary gain; and (5) Plaintiff's statements were inconsistent with his daily activities.  See AR at 27-28.

1.    Inconsistency with Medical Evidence – Physical Symptoms

Plaintiff alleged that he could only sit for 60 minutes and walk for 30 minutes at a time.  AR at 697.  He claimed that it was difficult to stand from a sitting position, and to squat or kneel.  Id.  Plaintiff testified that he had a hard time climbing even 12 stairs.  AR at 94.

The ALJ rejected Plaintiff's allegations regarding his physical symptoms because they were not consistent with the objective medical evidence.  AR at 26.  "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); see also 20 C.F.R. § 416.929(c)(2).

---

[2] The Commissioner issued Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304 (2017), on October 25, 2017, which "eliminat[ed] the use of the term credibility from our sub-regulatory policy" and "clarif[ied] that subjective symptom testimony is not an examination of an individual's character," after the ALJ's decision here.  This does not change the present analysis, however, because even assuming SSR 16-3p applies retroactively, the Ninth Circuit has held that SSR 16-3p is consistent with existing Ninth Circuit precedent on evaluation of a claimant's testimony.  See Trevizo, 871 F.3d at 678 n.5.

The ALJ set forth a rational interpretation of the evidence in finding that Plaintiff's complaints were not entirely consistent with the medical evidence. Plaintiff had full range of motion on examination at various times in 2011. See AR at 26, 501, 533, 645. He could move from sitting to supine and back easily. AR at 26, 527, 529. Examinations in 2012 and 2013 indicated that Plaintiff had symmetric motor strength, normal gait, and no tenderness in his spine. AR at 26, 665, 671, 677, 699. While none of these medical findings are conclusive, the ALJ did not err in citing them as factors supporting his rejection of Plaintiff's symptom testimony.

2.    Inconsistency with Medical Evidence – Mental Symptoms

Plaintiff alleged that he had difficulty interacting with others and had trouble dealing with crowds. AR at 51, 94, 96. He alleged that he had very limited reading, writing, and math abilities. See AR at 51, 87, 94. Plaintiff alleged that he had memory loss. AR at 95. Plaintiff also testified that he had panic attacks on a daily basis due to stress. AR at 119-20.

As with Plaintiff's physical symptoms, the ALJ rejected these allegations because they were "not reasonably consistent with the medical evidence." AR at 26. The ALJ's recitation of the evidence here is not entirely accurate. He states, for example, that Plaintiff's psychological examinations from 2011 to 2013 were unremarkable, with "no appearance of anxiety, depression, or agitation." AR at 27. But Plaintiff reported anxiety at one of the appointments the ALJ cited, and another provider noted that anxiety, panic attacks, depression, inability to concentrate, and insomnia were present. See AR at 27,

498, 519.

Nonetheless, the ALJ's decision is a rational interpretation of the evidence that the Court will not disturb. See Thomas, 278 F.3d at 954. As the ALJ noted, Plaintiff's symptoms were well-controlled by medication. See AR at 27, 519, 735-36. Plaintiff acknowledged he felt "very stable" in December 2012. AR at 736. In June 2013, he reported "mild" mental health symptoms, which he claimed began a month earlier, and occurred randomly. AR at 796. The ALJ thus did not err in rejecting Plaintiff's symptom testimony on this basis.

3.     Drug-Seeking Behavior

The ALJ did not err in rejecting Plaintiff's testimony based on evidence of drug-seeking behavior. An ALJ may reject a claimant's testimony when there is evidence of drug-seeking behavior suggesting that the claimant exaggerated his symptoms to receive prescription pain medication. See Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001).

The ALJ presented a rational interpretation of the evidence in finding drug-seeking behavior. During an appointment in April 2011, Plaintiff made inappropriate comments toward a provider, appeared to be under the influence, made multiple comments about needing narcotic medication, and called a marijuana facility from the exam room before his appointment was over. AR at 27, 529. In November 2011, Plaintiff requested pain medication "just between you and me." AR at 27, 599. Records from June 2013 also indicate drug abuse involving valium. AR at 27, 804. The ALJ thus

did not err in rejecting Plaintiff's symptom testimony based on drug-seeking behavior.

### 4. Poor Work History

The ALJ further rejected Plaintiff's symptom testimony based on the view that his "sporadic work history raises a question as to whether the [Plaintiff's] continuing unemployment is actually due to medical impairments." AR at 27. An ALJ may discount a claimant's testimony when his work history suggests reasons other than disability for the claimant's failure to work. See Thomas, 278 F.3d at 959 (upholding ALJ's rejection of plaintiff's symptom testimony where she had a poor work history and showed "little propensity to work in her lifetime").

The ALJ's observation regarding Plaintiff's work history would not support the ALJ's credibility determination on its own, but is still a rational interpretation of the evidence. Plaintiff admitted that he abused drugs for much of his adult life and spent considerable time in prison. AR at 505-06. Plaintiff also testified that he stopped using drugs other than marijuana about 13 years ago, yet his earnings show little work during that time. See AR at 90, 368. The ALJ reasonably concluded that based on Plaintiff's sporadic work history, his continuing unemployment was more likely attributable to his drug use than to his medical impairments. See AR at 27.

### 5. Secondary Gain

The ALJ erred in rejecting Plaintiff's symptom testimony based on possible secondary gain. An ALJ may reject symptom testimony when substantial evidence indicates that the claimant is motivated by secondary gain rather than disability. See Barr

v. Colvin, 583 F. App'x 799, 799 (9th Cir. 2014).  But the ALJ's discussion of secondary gain here is so vague and lacking in support that it cannot justify rejecting Plaintiff's symptom testimony.

The ALJ pointed to a single doctor's note to support his finding of possible secondary gain.  See AR at 28.  In that note, from November 2011, Plaintiff's provider wrote that Plaintiff was trying to get disability benefits for his mental health.  AR at 599.  The provider further wrote that Plaintiff was "working part-time and [was] happy about this."  Id.  The ALJ concluded from these two statements that Plaintiff "could be attempting to portray more extensive limitations than are actually present in order to increase the chance of benefits."  AR at 28.

The ALJ's conclusion from this scant evidence is too speculative.  See Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008) (finding error where an ALJ relied on her own speculation about the claimant's ability to return to his past work instead of persuasive evidence in the record).  The fact that Plaintiff was happy to be working part-time while he was also trying to obtain disability benefits does not establish that Plaintiff was exaggerating his symptoms to improperly obtain disability benefits.  The ALJ thus erred in relying on possible secondary gain as a reason to reject Plaintiff's symptom testimony.

6.    Inconsistency with Daily Activities

The ALJ lastly rejected Plaintiff's symptom testimony because it was inconsistent with his daily activities.  AR at 28.  An ALJ may use a claimant's activities to form the

basis of an adverse credibility determination if they "contradict [her] other testimony." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).

While some of the activities the ALJ cited occurred after the alleged disability period, see, e.g., AR at 28, 837, the ALJ reasonably evaluated the evidence in reaching his conclusion. The ALJ noted that Plaintiff took care of his wheelchair-bound brother, had no issues with personal care, prepared himself simple meals, tried to do house and yard work at his brother's house, shopped in grocery stores, and attended bible study and church. AR at 28, 456-59. The ALJ reasonably concluded that these contradicted Plaintiff's allegations of severe physical and social impairments.

7.    Harmless Error

Although the ALJ included erroneous reasons for rejecting Plaintiff's symptom testimony, Plaintiff has failed to show harmful error. See Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012) (holding that the party challenging an administrative decision bears the burden of proving harmful error) (citing Shinseki v. Sanders, 556 U.S. 396, 407-09 (2009)). An error is harmless "where it is 'inconsequential to the ultimate disability determination.'" Molina, 674 F.3d at 1115 (quoting Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008)). The ALJ included valid reasons for rejecting Plaintiff's symptom testimony, so his inclusion of erroneous reasons was inconsequential and therefore harmless.

**B.    Evaluation of the Medical Evidence**

Plaintiff argues that the ALJ erred in assessing the medical evidence. Dkt. 12 at 3-

10. In particular, Plaintiff argues that the ALJ improperly assessed the opinions of Terilee Wingate, Ph.D., Pamela Moslin, M.D., Jesse McClelland, M.D., Dan Neims, Psy.D., and Tasmyn Bowes, Psy.D. Id. Plaintiff also briefly referenced several other medical opinions, but did not identify any specific errors. While the Court considers the record as a whole in reviewing each claim of error, the Court does not reweigh the evidence. See Thomas, 278 F.3d at 954. The Court therefore will not separately address the ALJ's evaluation of these other opinions.

As an initial matter, several doctors listed Global Assessment of Functioning ("GAF")[3] scores in their opinions, which the ALJ rejected. See AR 29-31. The ALJ rejected these scores because they were "based on functioning at the time of [each] evaluation, which is not necessarily indicative of functioning for a 12-month period." AR at 30. This reasoning accords with the decision of the American Psychiatric Association, which dropped the GAF score from its Diagnostic and Statistical Manual of Mental Disorders because it lacked clarity and had questionable value in routine practice. See Golden, 29 Vet. App. at 224. To the extent Plaintiff challenges the ALJ's reasoning here, the Court finds no error.

1. Dr. Wingate

Dr. Wingate examined Plaintiff on November 4, 2010. AR at 484-89. Dr. Wingate opined that Plaintiff had moderate to marked limitations in memory and

---

[3] GAF is a numeric scale from 0 to 100 that was intended to reflect "psychological, social, and occupational functioning on a hypothetical continuum of mental health illness." Golden v. Shulkin, 29 Vet. App. 221, 225 (Vet. App. 2018) (internal citation and quotation marks omitted).

attention, as he "has difficulty paying attention to tasks and remembering what he is supposed to do." AR at 486. She further opined that Plaintiff had marked issues with anger and a personality disorder. Id.

In terms of functional limitations, Dr. Wingate opined that Plaintiff had mild-to-moderate limitations in cognitive and social areas. AR at 487-88. Plaintiff was mildly limited in his ability to "understand, remember, and persist in tasks following simple instructions." AR at 487. Plaintiff was moderately limited in his ability to understand, remember and persist in tasks following complex instructions; learn new tasks; perform routine tasks without undue supervision; be aware of normal hazards and take appropriate precautions; communicate and perform effectively in a work setting with limited and unlimited public contact; and maintain appropriate work behavior. AR at 487-88.

The ALJ gave Dr. Wingate's opinions partial weight. AR at 28. He accepted the mild to moderate limitations, but rejected the marked limitations because they were "based mostly on the claimant's subjective complaints about his symptoms." Id.

Plaintiff does not challenge the ALJ's assessment of Dr. Wingate's opinions, but argues that the ALJ erred in failing to include all of Dr. Wingate's moderate limitations in the RFC. Dkt. 12 at 3. But Plaintiff does not identify with any specificity what limitations were not included in the RFC. See Id. As a result, Plaintiff has not met his burden of proving error. See Ludwig, 681 F.3d at 1054 (citing Shinseki, 556 U.S. at 407-09).

The ALJ—not the Court—is responsible for translating a doctor's medical

findings into a concise RFC.  <u>Rounds v. Comm'r Soc. Sec. Admin.</u>, 807 F.3d 996, 1006

(9th Cir. 2015) (citing <u>Stubbs-Danielson v. Astrue</u>, 539 F.3d 1169, 1174 (9th Cir. 2008)).

The ALJ limited Plaintiff to "routine or learned" level work; he limited Plaintiff to only

superficial contact with the public; he stated that Plaintiff needed to work independently;

he stated that Plaintiff would be off task five percent of the workday; and he stated that

Plaintiff should not perform security work or be in charge of the safety of others.  AR at

25.  These restrictions adequately addressed Dr. Wingate's opinions, and Plaintiff has

failed to meet his burden of proving otherwise.

     2.    <u>Dr. Moslin</u>

Dr. Moslin examined Plaintiff on May 2, 2011.  AR at 503.  She diagnosed

Plaintiff with polysubstance abuse and dependence in partial remission; cannabis use and

dependence, persistent; cognitive disorder, not otherwise specified; organic mood

disorder due to his polysubstance abuse disorder; and antisocial and borderline

personality disorders.  AR at 509.  Dr. Moslin concluded that Plaintiff had very limited

ability to perform even simple or repetitive tasks; could take instructions from a

supervisor and interact well with others as long as he was not feeling threatened; and

would need to be continuously refocused as he would have difficulty performing work

activities on a consistent basis.  AR at 510.  She noted that Plaintiff would need

psychiatric treatment for anxiety and anger "before he would be able to deal with the

stress of a workplace."  <u>Id.</u>

The ALJ gave Dr. Moslin's opinions little weight.  He stated that "Dr. Moslin

thought most of the claimant's problems relating to work involved his prior drug use and the residual effects." AR at 29. The ALJ also found that while Dr. Moslin opined that Plaintiff had a "persistent brain disorder" that was likely due to his years of drug abuse, Dr. Moslin did not cite any objective factors for this diagnosis. Id.

In order to reject an examining doctor's opinion that is contradicted, the ALJ must provide "'specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" Morgan v. Comm'r, Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (quoting Andrews, 53 F.3d at 1041). The ALJ can satisfy this requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citing Magallanes, 881 F.2d at 751). The court may also draw "specific and legitimate inferences from the ALJ's opinion." Magallanes, 881 F.2d at 755.

The ALJ has failed to meet this standard. The fact that Plaintiff's impairments may be due to damage caused by past drug use is not relevant to whether Dr. Moslin's opinions should be accepted. A claimant's drug use is only relevant as a cause of disability to the extent that the ALJ determines that the claimant would not be disabled if he stopped using drugs. See 20 C.F.R. § 416.935(b); see also Parra v. Astrue, 481 F.3d 742, 746-47 (9th Cir. 2007). The ALJ made no such determination here, and thus could not reject Dr. Moslin's opinions based on the fact that Plaintiff's impairments may have been caused by past drug use.

The ALJ did, however, properly reject Dr. Moslin's opinion that Plaintiff had a very limited ability to perform simple tasks. The ALJ stated that Dr. Wingate's testing contradicted Dr. Moslin's findings. AR at 29. Based on her testing, Dr. Wingate found that Plaintiff could perform a three-step task, and could complete other simple tests. See AR at 487. In rejecting Dr. Moslin's opinion on Plaintiff's ability to perform simple tasks, the ALJ was resolving a conflict in the medical evidence. His resolution was a rational interpretation of the evidence, and thus it must be upheld. See Thomas, 278 F.3d at 954.

The ALJ's errors here must nonetheless be considered harmful. The ALJ gave no valid reasons for rejecting Dr. Moslin's opinions that Plaintiff would have trouble consistently performing work activities without being continuously refocused, and that Plaintiff needed treatment for anger and anxiety before returning to work. The Court cannot confidently conclude that the ALJ would have reached the same disability determination had he properly evaluated Dr. Moslin's opinions, and thus his errors here were harmful. See Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006) (holding that an error will be deemed harmful unless the court can "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination").

3.    Dr. McClelland

Dr. McClelland examined Plaintiff on October 31, 2011. AR at 585. He diagnosed Plaintiff with attention-deficit hyperactivity disorder ("ADHD"), combined

type; rule-out posttraumatic stress disorder; amphetamine dependence, sustained, full remission; and depressive disorder, not otherwise specified. AR at 588. Dr. McClelland opined that Plaintiff was capable of performing simple and repetitive tasks, but may struggle with detailed and complex tasks. AR at 589. Plaintiff's conditions "may impact [his] ability to accept instructions from supervisors or perform work activities on a consistent basis without special or additional instruction"; "may struggle to interact with coworkers, the public, and supervisors"; "may have difficulty maintaining regular attendance in the workplace"; "may have interruptions in a normal workday" from his symptoms; and "would likely struggle to dealt with the usual stress encountered in the workplace." AR at 589-90. Dr. McClelland concluded that Plaintiff's conditions were treatable, but that his diagnoses, history of substance abuse, and mental health issues may make it difficult for him to receive appropriate care. AR at 589.

The ALJ gave Dr. McClelland's opinions partial weight. He agreed that Plaintiff could perform simple and repetitive tasks, but determined that "the remainder of the evaluation is mostly based on claimant's subjective complaints." AR at 30. Furthermore, Plaintiff described improvement with medication, his mental status examinations were unremarkable, and he had been able to attend medical appointments and evaluations without problems. Id.

The ALJ's first reason for discounting Dr. McClelland's opinions—that they were mostly based on Plaintiff's subjective complaints—fails to meet the specific and legitimate standard. An ALJ may discount an examining doctor's opinions where they

are "based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible." Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014) (quoting Tommasetti, 533 F.3d at 1041). However, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017). Psychiatric evaluations "will always depend in part on the patient's self-report" because "unlike a broken arm, a mind cannot be x-rayed." Id. (internal quotation marks omitted) (quoting Poulin v. Bowen, 817 F.2d 865, 873 (D.C. Cir. 1987)).

Contrary to the ALJ's assertion, Dr. McClelland's assertions were not mostly based on Plaintiff's subjective complaints. They were based on Dr. McClelland's clinical interview and mental status examination. See AR at 585-88. "[C]linical interview[s] and . . . mental status evaluation[s] . . . are objective measures and cannot be discounted as a 'self-report.'" Buck, 869 at 1049. The ALJ thus erred in rejecting Dr. McClelland's opinions on this basis.

The ALJ's rejection of Dr. McClelland's opinions based on contradictory medical evidence, while not entirely accurate, is a rational interpretation of the evidence. See Thomas, 278 F.3d at 954. The record supports the ALJ's determination that Plaintiff's symptoms improved with medication. See AR at 30, 519, 735-36. Plaintiff was stable on examination, and claimed only mild symptoms. See AR at 736, 796.

Because the ALJ included a valid reason for rejecting Dr. McClelland's opinions, the Court finds any error here harmless. See Carmickle, 533 F.3d at 1162.

4. <u>Dr. Neims</u>

Dr. Neims examined Plaintiff on April 12, 2012. AR at 777. He diagnosed Plaintiff with ADHD by history, polysubstance dependence, and personality disorder with antisocial factors. AR at 778. Dr. Neims noted that Plaintiff had mild to moderate limitations in cognitive and social functioning, but marked limitations in his "[a]bility to communicate and perform effectively in a work setting with public contact." AR at 779.

The ALJ gave Dr. Neims's opinions partial weight. AR at 31. He agreed with Dr. Neims's mild and moderate limitations. <u>Id.</u> But the ALJ gave little weight to Dr. Neims's opinion that Plaintiff was markedly limited in his ability to communicate and perform effectively in a work setting with public contact because it was mostly based on Plaintiff's self-reports, and was "somewhat internally inconsistent with [Dr. Neims's] finding of only moderate limits working around others." AR at 31.

The ALJ committed the same error in rejecting Dr. Neims's opinions for being too heavily based on Plaintiff's subjective complaints as he made in rejecting Dr. McClelland's opinions on that basis. <u>See</u> <u>supra</u> Part VI.B.3. Dr. Neims performed a clinical interview and mental status exam. AR at 782-86. There is no indication that Dr. Neims relied more on Plaintiff's subjective reports than he did on these objective evaluations, and thus the ALJ erred in rejecting Dr. Neims's opinions on this basis.

The ALJ's second reason for discounting Dr. Neims's opinions, that they were "somewhat internally inconsistent," is based on an incorrect reading of Dr. Neims's report. Dr. Neims opined that Plaintiff had a marked limitation (meaning very significant

interference with his ability to perform the task) in his ability to communicate and perform effectively in a work setting with public contact. AR at 779. If Plaintiff only had limited contact with the public, his ability to communicate and perform effectively was only moderately limited (meaning significant interference with his ability to perform the task). Id. Contrary to the ALJ's findings, these opinions are not contradictory. Rather, they indicate that Plaintiff's limitations are influenced by the amount he has to interact with the public.

Even so, Plaintiff has not shown that the ALJ harmfully erred in his evaluation of Dr. Neims's opinions. See Ludwig, 681 F.3d at 1054 (citing Shinseki, 556 U.S. at 407-09). The ALJ included in the RFC, among other things, a limitation that accounted for Dr. Neims's opinion suggesting Plaintiff had difficulty interacting with the public by limiting him to superficial face-to-face contact with the public. See AR at 25. The RFC also included limitations that related to those areas in which Dr. Neims opined that Plaintiff had moderate limitations. See id. Thus, Plaintiff has not shown harmful error.

     5.    <u>Dr. Bowes</u>

Dr. Bowes examined Plaintiff on March 20, 2013. AR at 762. She diagnosed Plaintiff with major depressive disorder, recurrent, moderate; reading disorder; and rule-out cognitive disorder due to his treatment for Hepatitis C. AR at 764. Dr. Bowes opined that Plaintiff had mild to moderate limitations in most basic work activities. AR at 765. She also opined that Plaintiff had marked limitations in his ability to understand, remember, and persist in tasks by following detailed instructions; and perform activities

within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision. Id.

The ALJ gave partial weight to Dr. Bowes's opinions. AR at 31. He found that the mild and moderate limitations were consistent with the medical record and Dr. Bowes's examination. Id. The ALJ rejected Dr. Bowes's marked limitations because they were not supported by objective information, and Dr. Bowes "likely relied on subjective complaints." Id.

The ALJ erred in rejecting Dr. Bowes's opinions here. First, her opinions were supported by objective information, as she performed a clinical interview and mental status exam. See AR at 762-64, 766-67. These are both objective measures. See Buck, 869 F.3d at 1049. She also administered several psychological tests. See AR at 763-64, 768-72. These are likewise objective measures. Cf. Buck, 869 F.3d at 1049.

Second, and on a related note, the ALJ once again erred in rejecting Dr. Bowes's opinions as being too heavily based on Plaintiff's subjective complaints. See supra Part VI.B.3. The record does not show that Dr. Bowes relied more heavily on Plaintiff's subjective complaints than on her objective tests.

Because the Court finds that the ALJ did not give any valid reasons for discounting Dr. Bowes's opinions, the ALJ harmfully erred. Dr. Bowes's opinions were relevant to the RFC determination, and the Court cannot confidently conclude that the RFC would remain the same if Dr. Bowes's opinions were properly assessed.

///

## C. Assessment of Plaintiff's RFC

Plaintiff argues that the ALJ erred in his RFC determination. Dkt. 12 at 17-18. This argument is largely derivative of Plaintiff's other arguments, as it is primarily based on the argument that the ALJ failed to include all of the limitations arising from Plaintiff's symptom testimony and the opinions of the medical experts. See id. at 17. Since the Court has found that the ALJ erred in his assessment of the opinions of Dr. Moslin and Dr. Bowes, the Court agrees with Plaintiff.

Plaintiff further argues that the ALJ erred in finding that he had past relevant work as a painter. See id. "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 416.960(b). The ALJ did not include any factual findings or explanation to support his determination that Plaintiff had past relevant work as a painter. See AR at 34. The Court can affirm an ALJ's decision "only on the grounds articulated by the agency," Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991), and thus cannot affirm here since the ALJ gave no reason for his past relevant work determination.

## D. Scope of Remand

Plaintiff asks the Court to remand this matter for an award of benefits. Dkt. 12 at 18-19. The Court may remand for an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing Smolen v. Chater, 80

F.3d 1273, 1290 (9th Cir. 1996)).  But remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule."  <u>Leon v. Berryhill</u>, 808 F.3d 1041, 1044 (9th Cir. 2017).  If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded for further proceedings.  <u>McCartey</u>, 298 F.3d at 1076.

The appropriate remedy here is remand for further proceedings.  There are conflicting medical opinions and evidentiary questions that still must be resolved.  The Court is not in a position to reweigh the evidence, nor can it conclude that the ALJ would be required to find Plaintiff disabled after properly evaluating the evidence.  <u>See</u> <u>Leon</u>, 880 F.3d at 1046-48 (affirming the district court's decision to remand for further proceedings, rather than remand for payment of benefits, where the record revealed conflicts, ambiguities, or gaps in the evidence).

On remand, the ALJ must reevaluate the opinions of Dr. Moslin, and Dr. Bowes; reassess Plaintiff's RFC; reevaluate Plaintiff's past relevant work; and conduct further proceedings as necessary to reevaluate the disability determination in light of this opinion.

## VII.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

Dated this 14th day of September, 2018.

ROBERT S. LASNIK
United States District Judge